Link: 308

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PANAVISION IMAGING, LLC,<br><br>            Plaintiff,<br>      v.<br><br>OMNIVISION TECHNOLOGIES, INC. ET Al.,<br><br>            Defendants. | Case No. 2:09-cv-01577-MRP-CT<br><br>**ORDER GRANTING CANON U.S.A., INC.'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT** |

## I.   INTRODUCTION

Defendant Canon U.S.A., Inc. ("Canon"), moves for summary judgment that all of its accused products do not infringe Plaintiff Panavision Imaging, LLC's ("Panavision") U.S. Patent No. 6,818,877 ("the '877 patent") (filed May 17, 2002). Canon's motion presents two closely related issues: (1) What is the claim scope of the '877 patent?  (2) Do Canon's accused products meet the limitations of the '877 patent?  The first issue is a legal question of claim construction.  The second is a factual question for summary judgment.  Because the Court finds that Canon's accused products do not meet the claim scope of the '877 patent, the Court grants Canon's motion.

## II. LEGAL STANDARDS

The legal standard for a moving party to prevail on a motion for summary judgment is well established. "If the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law," summary judgment is proper. Fed. R. Civ. P. 56 (a). A court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III. BACKGROUND

The '877 patent discloses a "video bus for an array of pixel amplifiers . . . designed for a minimum quiescent current draw." The '877 Patent, at Abstract. The disclosed electrical circuit includes a "pixel amplifier (or column amplifier)" with "high impedance pull-ups and low impedance pull-downs to conserve over-all power dissipation." *Id.* A pull-up amplifier is connected to the bus.[1] *Id.* at 3:13–16. The pull-up amplifier's role is to reset the bus to a reference voltage at the times when circuit disconnects the column amplifiers from the bus. *Id.* at 2:56–60. Claim 1 is as follows:

> 1. Analog bus for a solid state video imager, comprising
>    a) one or more conductive channels;
>    b) a plurality of column output amplifiers, each connected with a selected pixel of its associated column, and having a low-impedance amplifier device;
>    c) respective switching means for selectively connecting outputs of the column amplifiers to said one or more conductive channels; and

---

[1] This order uses the term "bus" interchangeably with the term "conductive channel."

        d) a pre-charging high-impedance pull-up amplifier coupled to said one or more conductive channels for periodically charging up the one or more conductive channels between connections of said switching means.

The '877 Patent, at 3:5–17.

    The patent's four key components work together. They are the conductive channel, the array of column amplifiers, switches to connect each of the column amplifiers to the conductive channel, and a pull-up amplifier for charging the conductive channel. According to the sole figure in the '877 patent, the conductive channel forms the central nexus of the device. The '877 Patent, at fig.1. The column amplifiers (with the associated video inputs) connect to the conductive channel by a switch. *Id.* The pull-up amplifier likewise connects to the conductive channel. *Id.*

    Panavision described the patent's operation during claim construction. In the initial state, all of the column amplifiers are disconnected from the conductive channel. Canon Ex. 2, at ¶ 39, ECF No. 311 (Transcript of Panavision's Feb. 1, 2011 Technology Tutorial for Claim Construction). "During this period a pre-charging high impedance amplifier pre-charges the bus . . . ." *Id.* The multiple column amplifier paths wait for connection to the bus. *Id.* After the bus is charged to a reference voltage, one switch connects one column amplifier output to the bus to drive it to a different electrical signal value. *Id.* The switch is then disconnected and the pre-charging high-impedance amplifier resumes pre-charging the bus to the reference voltage. *Id.* The discharge-recharge process repeats for each of the plurality of column amplifier lines. *Id.* at ¶ 40.

## IV. DISCUSSION

    The Court can best illustrate the claim construction controversy by first discussing the accused device. The schematic below (which is representative of all of Canon's accused devices) captures the focus of the parties' dispute.



Pl.'s Br. 10, ECF No. 309.

Panavision alleges that N-FET transistor M1 (circled in red) is the pre-charging high-impedance pull-up amplifier.[2] Panavision's Statement of Genuine Issues at ¶ 31, ECF No. 337 ("Def.'s Disputed Facts").  The alleged conductive channel is represented by the yellow "Charge Flow" arrow and green "Output" column line.  Canon argues that its products cannot infringe because the pull-up amplifier is not connected to the conductive channel in the method claimed by the '877 patent.  In particular, the pull-up amplifier does not supply charge to the conductive channel because it connects to the input of the N-FET column

---

[2] In this particular dispute, the Court assumes P-FET and N-FET transistors are interchangeable with pull-up amplifiers.  For the purposes of this order, most uses of either term refer to the pull-up amplifier.  The exception is when it refers to the accused column amplifier.

1 amplifier. Instead, the column amplifiers supply the charge to the conductive
2 channel. Panavision does not raise any material dispute as to the actual operation
3 of Canon's accused device. Rather, Panavision counters by arguing that an
4 expansive definition of the word "coupled" captures the way that the pull-up
5 amplifier connects to the conductive channel.

### A. CLAIM CONSTRUCTION IN THE '877 PATENT

7     The first suggestion from either of the parties that claim construction would
8 be required came in Panavision's responsive brief to Canon's motion for summary
9 judgment. In that brief, Panavision suggested that the definition of "coupled" in
10 the '877 patent could encompass a broad meaning. In response, Canon seized on
11 the controversy to argue that summary judgment was appropriate because the only
12 issue presented was one of claim construction.

13     Rather than construing the word, "coupled," the Court finds it necessary to
14 construe the entire phrase "a pre-charging . . . pull-up amplifier coupled to said one
15 or more conductive channels for periodically charging up the one or more
16 conductive channels . . . ." The narrower claim term "coupled" is inadequate by
17 itself to permit understanding of the actual invention that was patented.

18     **1. "a pre-charging . . . pull-up amplifier coupled to said one or more**
19        **conductive channels for periodically charging up the one or more**
20        **conductive channels . . . ."**

21     By reviewing the intrinsic evidence, the Court finds that the pull-up
22 amplifier must supply charge to the conductive channel.

23     Panavision proposes a different construction. According to Panavision, the
24 pull-up amplifier need not perform the work of charging the conductive channel.
25 Instead, it is enough that it merely controls another component and that the second
26 component supply the charge. Its argument is that the pull-up amplifier is "for
27 charging up" the conductive channel because it causes the charging to happen.
28

Problematically, Panavision's "causal argument" finds no support in the intrinsic evidence.

    Beginning with the language of the claim, the Court notes that the most natural reading of the word "for" in the claim is that the pull-up amplifier's purpose is to charge up the conductive channel itself.  Further, the words "pre-charging" modify the words "pull-up amplifier' indicating that the amplifier itself charges the conductive channel.

    The patent specification supports this reading.  The specification states that in the short time the switches are disconnected, "the highly capacitive analog bus is pulled high by a P-FET to drain voltage $V_{DD}$. . . .  This means that the array drivers do not need to source current to the highly capacitive analog bus in order to drive it to a higher voltage."  The '877 Patent, at 2:7–13.  It also states, "[t]he bus **13** is provided with a high-impedance P-FET **15** to reset the bus to $V_{DD}$. . . ."  *Id.* at 56–60.  Both statements indicate that the P-FET itself charges the conductive channel.  Indeed, the specification indicates that the purpose of the invention is to reduce the power consumption of the column amplifiers.  The invention reduces power consumption by having the pull-up amplifier do the work the column amplifier used to do in the prior art.  If Panavision's "causal argument" were true, the purpose of the patent would be frustrated because the pull-up amplifier would no longer do the work of charging the conductive channel.  Instead, the column amplifier would be required to consume power to charge the conductive channel.

    The prosecution history further supports the requirement that the pull-up amplifier charge the conductive channel.  The patent examiner initially rejected the claim at issue in view of two pieces of prior art, U.S. Patent No. 5,892,540 ("Kozlowski") and U.S. Patent No. 6,084,299 ("Pace").  Def.'s Ex. 3, Examiner's December 9, 2003 Rejection 2–3, ECF No. 331-3.  In responding to the rejection, the patentee amended the claim and argued that the prior art did not read on the

'877 patent.  In particular, the patentee amended the claim term to add the requirement that the pull-up amplifier be "coupled to one or more conductive channels."  Def.'s Ex. 3, Patentee's May 14, 2004 Amendment and Remarks, at 2 ("the May 14, 2004 Amendment").

Panavision argues that "coupled" has a broad meaning that does not require charge flow, and therefore this amendment does not illustrate that the pull-up amplifier must charge the conductive channel.  This argument is puzzling.  It would mean that Panavision amended the claim not to overcome the prior art, but to expand the claim term to cover any means of connection.  Rather than accepting that strained reading of the amendment, the Court reads the amendment in conjunction with the patentee's arguments to overcome Kozlowski and Pace.  When read in conjunction with those arguments, it is clear that the amendment's purpose was to indicate that the pull-up amplifier charges the conductive channel.

The patentee made two prosecution arguments that illustrate the patentee's admission that the pull-up amplifier charges the conductive channel.  The patentee said the following:

- "In the present invention, the P-FET pull-up amplifier is activated to pull the video bus **13** to a fixed, predetermined reference voltage directly, to pre-charge the bus."  The May 14, 2004 Amendment 4.
- "Claims 1 to 3 do specifically recite that the pre-charge amplifier, to wit, the P-FET acts on the conductive bus channels that follow the column amplifiers and the switching means or select switches.  These claims also recite that the pull-up amplifier acts to periodically charge up the conductive channels between the switching or actuation of the switching means."  The May 14, 2004 Amendment 5.

The natural reading of these two statements is that the pull-up amplifier charges the conductive channel.  The word "directly," in the first statement, indicates that the

-7-

1 pull-up amplifier charges the video bus.  The second statement dispels any doubt
2 because it states that the pull-up amplifier "acts" on the conductive channel.  These
3 statements and others made by the patentee indicate that the patentee intended to
4 claim pull-up amplifiers that directly charge the conductive channel.[3]
5       The Court agrees with Canon.  The intrinsic evidence consistently and
6 repeatedly states that the pull-up amplifier charges the conductive channel.  For
7 this reason, the Court determines that the pull-up amplifier must directly charge the
8 conductive channel.

### B. NON-INFRINGEMENT

10       Because Panavision does not dispute Canon's explanation for the method of
11 operation of its pull-up amplifier, and because the pull-amplifier supplies no
12 charge to the conductive channel, the Court finds there is no material dispute and
13 that Canon's products do not infringe.

14 //
15 //
16 //
17 //
18 //
19 //
20 //

---

[3] The patentee also said the following in relation to Kozlowski: "[I]n Kozlowski, the amplifier 22 is positioned at the input of the column amplifier . . . .  It is not clear that . . . the [amplifier] 22 . . . serves to pre-charge any bus member to any predetermined level . . . .  There is no teaching in this reference to employ a pull-up amplifier or other pre-charging means on the output bus."  The May 14, 2004 Amendment 4.  And he said the following regarding Pace: "Applicant further notes that the output bus illustrated in Pace . . . lacks any pull-up amplifier or any other precharging means."  *Id.*
These statements indicate that the pull-up amplifier's role in the '877 patent is to charge the conductive channel.

-8-

## V.  CONCLUSION

For the reasons stated above, Canon's motion is **GRANTED**.

IT IS SO ORDERED.

DATED: February 03, 2012                    _____
                                            Hon. Mariana R. Pfaelzer
                                            United States District Judge