Links: 250, 320

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| PANAVISION IMAGING, LLC,<br><br>             Plaintiff,<br>    v.<br>OMNIVISION TECHNOLOGIES, INC. ET AL.,<br><br>             Defendants. | Case No. 2:09-CV-01577-MRP (CTx)<br><br>**ORDER GRANTING MICRON/APTINA'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT** |

## I.    INTRODUCTION

Plaintiff Panavision Imaging, LLC, accuses Defendants Micron Technology, Inc., Aptina Imaging Corp., and Aptina, LLC (collectively, "Micron/Aptina") of infringing U.S. Patent No. 6,818,877 ("the '877 Patent") (filed May 17, 2002)—embodying an invention that reduces the amount of power consumed by a digital-image sensor.  Micron/Aptina move for summary judgment of noninfringement on the ground that Panavision failed to identify column output amplifiers and column select switches in its infringement contentions against Micron/Aptina's products as is required by claims 1(b) and 1(c) the '877 Patent.

Micron/Aptina originally moved for summary judgment in May 2011. Because Panavision's infringement contentions were not final, the Court declined to rule at that time. After Panavision served its final infringement contentions, Micron/Aptina renewed their motion for summary judgment on December 2, 2011.

In its opposition, Panavision argues that there is no distinction between the row select switches that exist in the accused product and the column select switch in the patent. Pl.'s Opp. at 2, ECF No. 345. Additionally, Panavision utilizes the expert testimony of David Taylor to show that show that Micron/Aptina's accused products' row select switches are actually column select switches. *Id.* Finally, Panavision argues that the accused products infringe, even if the switching means are not column select switches, because the accused row select switches are equivalent to the column select switches. *Id.*

Panavision fails to identify any genuinely controverted facts regarding whether Micron/Aptina's products infringe the '877 Patent. Specifically, Panavision's expert failed to point out why Micron/Aptina's products meet the column select switch limitations. Further, Panavision only identifies the conclusory statements of its own expert to show that Micron/Aptina's products utilize column output amplifiers and to show that row select switches are equivalent to column select switches. Accordingly, the Court **GRANTS** the motion for summary judgment.

## II.   DISCUSSION

"[I]f the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. . . ," a court shall grant summary judgment. Fed. R. Civ. P. 56(a). A party seeking to show a genuine dispute can "cite to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." *Id*. "Since the ultimate burden of proving infringement rests with the

patentee, an accused infringer seeking summary judgment of noninfringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001) (citing *Vivid Tech., Inc. v. American Sci. & Eng'g, Inc.*, 200 F.3d 795, 807 (Fed. Cir. 1999)).  Once the accused infringer points to an absence of evidence of infringement, the patentee (who bears the burden of proof) must point to facts that genuinely contradict the accused infringer.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986).

Panavision asserts the '877 Patent against thirty-three of Micron/Aptina's products.  *See* Taylor Decl. Ex. C at 1, ECF No. 346.  The only independent claim asserted is Claim 1.  It states:

> 1. Analog bus for a solid state video imager, comprising;
>
>> (a)  one or more conductive channels;
>>
>> (b) a plurality of **column output amplifiers**, each connected with a selected pixel of its associated column, and having a low-impedance amplifier device;
>>
>> (c) respective **switching means** for selectively connecting outputs of the column amplifiers to said one or more conductive channels; and
>>
>> (d) a pre-charging high-impedance pull-up amplifier coupled to said one or more conductive channels for periodically charging up the one or more conductive channels between connections of said switching means.

The '877 Patent, 3:5–17 (emphasis added).  According to the '877 Patent specification, the prior-art digital-image sensors utilized an array of pixel sensors, in which the pixel sensors were fixed to the rest of the circuit and read sequentially in order to store an image.  *See* the '877 Patent, at 1:32–60.  The '877 Patent reduces power usage by selectively connecting the pixels, only when the pixels are

1 | needed, and utilizing a pull-up amplifier to charge the bus (i.e. conductive channel)
2 | between connections. *Id.* at 2:3–30. This reduces quiescent power consumption.
3 | During claim construction, the parties agreed that the Court was to interpret
4 | claim 1(c) as a means-plus-function claim under 35 U.S.C. § 112, ¶ 6. Under 35
5 | U.S.C. § 112, ¶ 6, the Court must construe the claim to encompass the structures
6 | disclosed by the patent in the specification. Following that directive, the Court
7 | construed the structure for the switching means as "(1) Select1, Select2, . . .
8 | SelectN; or (2) transmission gates. The row of column select switches constitutes
9 | the only circuitry between the column output amplifiers and each conductive
10 | channel." Claim Construction Or. 7–8, ECF No. 234. Here, the structure disclosed
11 | in the specification is a "column select switch." The '877 Patent, at 2:50. When
12 | read together, claims 1(b) and 1(c) require a column select switch that connects the
13 | column amplifiers and pixels to the conductive channel.
14 | Micron/Aptina argues that the components Panavision identifies in
15 | Micron/Aptina's products as infringing the '877 patent do not include column
16 | output amplifiers nor do they include column select switches. Defs.' Br. at 6–7,
17 | ECF No. 250. According to Micron/Aptina's expert, Christopher Zeleznik, all of
18 | the switching means identified by Panavision in its final infringement contentions
19 | are row select switches. *See* Zeleznik Decl. ISO Micron/Aptina's Renewed MSJ
20 | 1–2, ECF No. 327 ("Zeleznik's Second Declaration"). This is easily confirmed by
21 | reviewing the schematics for the accused products. Many of those schematics
22 | label the transistor switch as "MROW." *See* Zeleznik's Second Declaration Ex. B,
23 | at 1. This provides an inference that the select switch is indeed a row select
24 | switch. This testimony is not controverted by Panavision.
25 | In order to show infringement, Panavision relies exclusively on its expert
26 | David L. Taylor and his review of Aptina provided schematics. In his declaration,
27 | Mr. Taylor testifies that the accused switches are "column select switches" under
28 | Micron/Aptina's definition, and his own definition. Taylor Decl. ¶¶ 1–2. But in

applying either definition, Mr. Taylor fails to show why the accused switches meet the key requirement of a column select switch—namely, that the switch select the column.[1]  Further, Mr. Taylor fails to provide any evidence for why the amplifier in each accused device is a column amplifier rather than some other amplifier. Indeed, the limitation in the patent, based both implicitly on the relationship between claims 1(b) and 1(c) and based on the structure of the switching means, requires the accused device have a column amplifier connected to a column select switch.  Panavision and Mr. Taylor cannot show that the accused product meets the column amplifier limitation by merely pointing to a transistor and calling it a column amplifier.

According to Micron/Aptina, persons of ordinary skill in the art distinguish between switching means that select a column of pixels and those that select a row of pixels.  Defs.' Br. at 3–4.  Micron/Aptina's expert, Mr. Zeleznik, gives a detailed explanation on how the pixel arrays work and why the difference between row select switches and column select switches is material.  *See* Zeleznik Decl. ISO MSJ, at ¶¶ 8–9, ECF No. 252 ("Zeleznik's First Declaration").[2]  Faced with that argument, Panavision should have come forward with some evidence that the row select switches and column select switches operate in substantially the same way.  Instead, Mr. Taylor testified consistently with Mr. Zeleznik's description regarding the difference between rows and columns.[3]

//

### III.   CONCLUSION

---

[1] The Court construed column as "all of the pixels within any vertical line that intersects the rows of the array." Claim Construction Or. 6.

[2] In Mr. Zeleznik's declaration, Mr. Zeleznik explains that signals are read from the array one row of pixels at a time.  Zeleznik's First Declaration at ¶ 7.  A row select signal activates all of the pixels in that row and causes the information captured by all the pixels in a row to be sent out of the array at the same time (i.e. in parallel). *Id.* at ¶ 8. Once the row information is sent out, a vertical column-by-column selection is performed so that each column is read one at a time.  *Id.* at ¶ 8.

[3] Mr. Taylor testified that each alleged switching means in "successive rows selectively connects the outputs of the column amplifiers to one or more conductive channels after the horizontal blanking period." Taylor Decl. at ¶ 3.

Because Panavision fails to raise a genuine issue of material fact showing that the components it identified in its final infringement contentions meet the "column output amplifier" limitation and the "switching means" limitation, the Court **GRANTS** Micron/Aptina's motion for summary judgment. Additionally, Panavision fails to identify any evidence that the alleged amplifier is a "column amplifier" as that term is used in the '877 patent. Finally, because Panavision has provided mere conclusory statements to show that a row select switch operates in the same manner as a column select switch, Panavision's doctrine of equivalents argument also fails.[4]

IT IS SO ORDERED.

DATED: February 03, 2012

_____
Hon. Mariana R. Pfaelzer
United States District Judge

---

[4] The Court disregards Mr. Taylor's testimony regarding the equivalency of row select switches and column select switches, see Taylor Decl. at ¶ 4, because the testimony is replete with conclusory statements. See *Novartis Corp. v. Ben Venue Labs.*, 271 F.3d 1043, 1051. Mr. Taylor provides no justification for his conclusion that the difference between row select switches and column select switches is irrelevant.